UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRUCE McCORMICK,
                              Plaintiff,

v.

TODD TERWILLIGER;
SHAWN SHUTT;
ROBERT McDANIELS;
JOEL ORDWAY; and
SHERIFF'S DEPARTMENT OF THE
COUNTY OF STEUBEN, NEW YORK,
                              Defendants.

Case # 11-CV-6444-FPG

DECISION & ORDER

## I.    Background

Plaintiff Bruce McCormick ("Plaintiff") brings this civil rights action to challenge both his August 10, 2009 arrest and the criminal prosecution that followed.

**Arrest**

On August 10, 2009, Plaintiff and his nephew Cheyenne were walking with their bicycles near the railroad tracks which run parallel to N.Y.S. Route 36 in the Town of Canisteo, New York. As they were walking down Ice House Road, which runs parallel to the railroad tracks, they encountered a group of people being led out of a wooded area and towards a clearing next to the railroad tracks.

Investigator Robert McDaniels ("McDaniels"), Deputy Sheriff Shawn Shutt ("Shutt"), and Deputy Sheriff Todd Terwilliger ("Terwilliger") of the Steuben County Sheriff's Department were escorting the group.[1] The people being led towards the clearing were nearby

---

[1] Plaintiff testified at his deposition that McDaniels, Terwilliger, and Shutt never identified themselves as police officers, and that he did not know they were police officers until after his arrest. ECF No. 22-8, Ex. J at 73-79. Deputy Shutt, on the other hand, claims that he did tell Plaintiff, "You know who we are, we are with the

campers. Earlier, the officers had come across the campers, six of whom were carrying guns. The officers confiscated the guns and decided to move the campers towards the railroad tracks.

Upon noticing Plaintiff and Cheyenne walking with their bicycles, Terwilliger and Shutt approached Plaintiff and told Plaintiff that he was to be searched. Plaintiff responded, "Why? Who are you? Who gives you a right to search me? I'm an American. I have rights." Plaintiff was then asked if he had any weapons, and responded that he was carrying a small comb knife and wearing steel-toed boots. Plaintiff voluntarily handed over the comb knife, but his offer to turn over the steel-toed boots was declined. Plaintiff refused to consent to a further pat down for weapons.

According to Plaintiff,[2] Shutt responded to Plaintiff's refusal by immediately grabbing Plaintiff's wrist. Plaintiff raised his arm in order to break Shutt's grip, at which point Plaintiff was tackled to the ground by Shutt and Terwilliger.[3] Plaintiff denies that he ever initiated physical contact with the officers. He also testified that "[t]hree seconds. Four seconds maybe" elapsed between the time Shutt had ahold of Plaintiff's wrist and the time Plaintiff was tackled to the ground.

Once Plaintiff was on the ground with Terwilliger and Shutt on top of him, Terwilliger punched Plaintiff in the side and Shutt threatened to spray Plaintiff in the face with pepper spray if Plaintiff did not submit himself to them. Plaintiff submitted, and after requesting medical attention was transported via ambulance to St. James Mercy Hospital and ultimately diagnosed with broken ribs. Plaintiff testified that while he was on the ground, his hands were out from his body and he never tried to prevent the officers from handcuffing him. It is unclear exactly how

---

Sheriff's office." ECF No. 22-3, Ex. D at 62. Both deputies were wearing dark blue T-shirts and green pants. ECF No. 22-5, Ex. F at 1. The T-shirts had a yellow "Steuben County Sheriff's Department" logo on both the left breast and the back of the shirts. *Id.* Investigator McDaniels was wearing a shirt and tie, with a "swipe card" or "key card" attached to his belt. ECF No. 22-8, Ex. J at 62.

[2] The facts in this paragraph and the next paragraph are taken from Plaintiff's Complaint and Plaintiff's Deposition. ECF Nos. 1, 22-8 Ex. J

[3] According to Plaintiff, Terwilliger was standing behind him when Shutt grabbed his wrist.

long Plaintiff was being punched and threatened with pepper spray, but Plaintiff testified that he was handcuffed "shortly after" being punched.

Patrick Brown ("Brown"), a witness, testified at his deposition that "maybe a minute, minute and a half" went by from the time the physical confrontation started until Plaintiff was finally handcuffed. According to Brown, Plaintiff attempted to put his own hands behind his back in order to submit to the officers, but Terwilliger and Shutt were "cranking him [Plaintiff] around like a rag doll" and that they "didn't really give him a chance to . . . do what they were asking him to do. They were basically shoving his face around in the gravel." ECF No. 22-7, Ex. H at 18-20.

Defendants tell a far different story of the incident.[4] According to Defendants, it was Terwilliger who grabbed Plaintiff's wrist after Plaintiff refused to consent to a further pat down. Terwilliger testified at his deposition that when he grabbed Plaintiff's wrist, Plaintiff pushed him in the chest. Terwilliger stated that he then "tried to gain control of [Plaintiff] and we ended up on the ground." As to how the parties ended up on the ground, Terwilliger stated that Plaintiff "must have tripped." Shutt testified that he was "yards, not feet" away from the incident at the time, but that he saw Plaintiff push Terwilliger and then saw Plaintiff and Terwilliger go "down into a heap."

Once on the ground, Terwilliger testified that Plaintiff resisted arrest by keeping his arms underneath him to prevent the officers from placing Plaintiff's hands behind his back. In order to force Plaintiff to comply, Terwilliger punched Plaintiff in the side and Shutt threatened to spray Plaintiff with pepper spray. Plaintiff ultimately submitted, and was placed under arrest.

---

[4] The facts in this paragraph and the next two paragraphs are taken from the depositions of Terwilliger, Shutt, and McDaniels. ECF No. 22-3, Ex. C, D; ECF No. 22-4.

3

McDaniels testified that he was about fifteen yards away when the "scuffle" started, standing next to his car. He took about one step towards the scuffle, but then decided to remain in position because he was guarding the four confiscated guns and thought "if I go over there we could all end up with bullets in our backs."

**Criminal Prosecution**

Terwilliger submitted a report regarding the incident on August 10, 2009. ECF No. 1, Ex. B. In that report, Terwilliger wrote that Plaintiff had pushed Terwilliger and resisted arrest. Terwilliger also submitted the Information charging Plaintiff with Resisting Arrest and Harassment in the Second Degree. *Id.*, Ex. C. The Resisting Arrest charge was dismissed before trial, and the Harassment charge was dismissed at trial following the close of the prosecution's case.

**Present Action**

Plaintiff's Complaint, filed on September 7, 2011, raises seven claims for relief. The first five claims involve alleged constitutional violations and seek relief under § 1983: (1) false arrest by Terwilliger, Shutt, and McDaniels; (2) false arrest by Sheriff Joel Ordway ("Sheriff Ordway") and the Sheriff's Department of the County of Steuben, NY ("Sheriff's Department"); (3) false imprisonment by Terwilliger, Shutt, and McDaniels; (4) malicious prosecution by all named Defendants; and (5) battery by Terwilliger, Shutt, and McDaniels. Plaintiff's last two claims involve alleged violations of NY state law: (6) battery by Terwilliger, Shutt, and McDaniels; and (7) malicious prosecution by all named Defendants.

Defendants have moved for summary judgment on all claims. For the following reasons, summary judgement should be granted in part and denied in part.[5]

## II. Legal Standard

**Summary Judgment**

A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In order to establish a material issue of fact, the non-movant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e), advisory committee's note on 1963 amendments). If, after considering the evidence in the light most favorable to the non-moving party, the court finds that no rational jury could find in favor of that

---

[5] Plaintiff also moved to strike the "expert" report of Michael Levine included as an exhibit in Defendants' motion for summary judgment. I did not rely on the report at all, making the motion to strike moot. *Piper v. City of Elmira*, 12 F. Supp. 3d 577 (W.D.N.Y. 2014) rejected a report of Mr. Levine under similar circumstances.

party, a grant of summary judgment is appropriate. *Scott*, 550 U.S. at 380 (citing *Matsushita*, 475 U.S. at 586-587).

**Qualified Immunity**

The doctrine of qualified immunity shields government employees acting in their official capacities from suits for damages under § 1983 unless (1) the conduct at issue violated plaintiff's clearly established constitutional rights and (2) a reasonable official in the defendant's position would have known the conduct amounted to a constitutional violation. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Here, it is not disputed that freedom from false arrest, from malicious prosecution, or from the use of excessive force are all clearly established rights. Therefore, the question of qualified immunity in this case turns on whether the actions of Defendants Terwilliger, Shutt, and McDaniels were objectively reasonable under the circumstances. *Id.*

### III. Discussion

**Claim #1: False Arrest Under § 1983 Against Terwilliger, Shutt, and McDaniels**

Plaintiff's first claim alleges false arrest by Defendants Terwilliger, Shutt, and McDaniels. Defendants' Motion for Summary Judgment should be granted as to McDaniels, but denied as to Terwilliger and Shutt.

**Terwilliger and Shutt**

A claim for false arrest involving an alleged violation of the Fourth Amendment and seeking relief under 42 U.S.C. § 1983 "is substantially the same as a claim for false arrest under New York law." *Levy v. City of New York*, 935 F. Supp. 2d 575, 585 (E.D.N.Y. 2013) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under New York tort law, a plaintiff in an action for false arrest must prove

6

by a preponderance of the evidence that (1) defendant intended to confine plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).

Because the first three elements are not disputed in this case, Defendants' Motion for Summary Judgment turns on whether the confinement of Plaintiff was privileged. The existence of probable cause is a complete defense to a § 1983 claim for false arrest. *Levy*, 935 F. Supp. 2d at 585. The doctrine of qualified immunity dictates that the appropriate standard in the present analysis is not whether probable cause actually existed, but whether a reasonable officer in the defendant's position would have believed that probable cause existed. *See Lowth*, 82 F.3d at 569.

Defendants argue that summary judgment should be granted because Defendants had probable cause to arrest Plaintiff. In support, Defendants cite testimony by Terwilliger and Shutt claiming that Plaintiff pushed Terwilliger in the chest and that Plaintiff resisted arrest by keeping his arms underneath him. ECF No. 22-2.

At the summary judgment stage, all genuinely disputed facts must be resolved in favor of the non-moving party. *Scott*, 550 U.S. at 380. The doctrine of qualified immunity, which shields police officers from liability for reasonable mistakes made in the course of their duties, does not allow the court to adopt the moving party's version of facts in a motion for summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). For the purposes of resolving this motion, therefore, the court must assume that Plaintiff did not push Terwilliger or Shutt, that Terwilliger and Shutt tackled Plaintiff to the ground when Plaintiff raised his hand in the air to break away from Shutt's grip, and that Plaintiff did not resist the attempts by Terwilliger or Shutt to place Plaintiff's hands behind his back once Plaintiff was on the ground.

Under those circumstances, no reasonable officer would have believed that probable cause existed to arrest Plaintiff. Harassment in the Second Degree requires both that a person "strike, shove, kick, or otherwise subject another person to physical contact," and that the person do so "with the intent to harass, annoy, or alarm another person." NY Penal Law § 240.26. No reasonable police officer could believe that raising one's hands in the air in order to break free from another person's grasp amounts to a violation of that statute. No undisputed facts indicate that Defendants had any articulable reason to suspect Plaintiff of a crime.[6] The relevant facts that Defendants rely on to support the existence of probable cause are genuinely disputed by Plaintiff, rendering summary judgment inappropriate.

**McDaniels**

Plaintiff does not claim that Investigator McDaniels was directly involved in the actual arrest or physical confinement of Plaintiff. Instead, Plaintiff argues McDaniels is liable for false arrest for his failure to intervene in the alleged constitutional violation perpetrated by Terwilliger and Shutt.

In general, "[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). An officer may be held liable under § 1983 based on a failure to intervene if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). Whether

---

[6] Defendants also point to other information in the depositions of Terwilliger, Shutt, and McDaniels to support probable cause: the officers were in an unfamiliar area, the officers were "outnumbered" by the campers, Plaintiff seemed to know some of the campers, and the officers had earlier heard an unknown male voice in the distance say "we brought the artillery." None of this information, even if admitted by Plaintiff, would have given a reasonable officer probable cause to arrest Plaintiff.

8

an officer can be held liable for failure to intervene is generally a question of fact for the jury to decide. *See Benitez v. Ham*, 2009 WL 3486379, at *25 (N.D.N.Y. Oct. 21, 2009) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Here, as Plaintiff was being questioned by Terwilliger and Shutt, McDaniels was standing next to the trunk of his car approximately fifteen yards away. ECF 22-4, Ex. E at 40. The confiscated guns and a bag of ammunition were on the trunk of McDaniels' car. *Id.* The detained campers were sitting on the railroad tracks next to McDaniels. *Id.*

McDaniels testified[7] that he could not hear the specifics of what was being said between Plaintiff and the officers, but "[y]ou could see by body language and by tone of voice that there was a confrontational situation to say the least taking place." *Id.* at 41. When McDaniels heard the campers next to him "starting to elevate and get upset," he began to focus on "crowd control." *Id.* McDaniels testified that "[a]t some point I see Mr. McCormick's arm extended and I see Deputy Terwilliger stepping back," causing noise to pick up within the group of campers. *Id.* at 44. McDaniels turned his attention to the campers, keeping "the crowd as close to me and as calm as I could." *Id.* at 48. The next time McDaniels looked over, Plaintiff was on the ground. *Id.* at 46. McDaniels then saw Terwilliger punch Plaintiff in the side, Shutt threaten to spray Plaintiff with pepper spray, and Plaintiff ultimately being placed under arrest. *Id.* at 50.

A reasonable person in McDaniels' position would not have known for sure whether Plaintiff's constitutional rights were being violated. From McDaniels' perspective, the conversation between Plaintiff and the officers got heated and eventually escalated into a physical confrontation that resulted in Plaintiff's arrest. McDaniels was focusing most of his attention on the group of campers next to him, who were becoming upset. Because he was watching the campers, McDaniels did not know for sure how Plaintiff and Terwilliger ended up

---

[7] McDaniels' testimony about his own observations and actions during this incident is not disputed by Plaintiff.

on the ground. Although we must assume, for the purposes of Defendants' Motion for Summary Judgment, that Plaintiff never pushed Terwilliger or Shutt and that Plaintiff never resisted arrest, McDaniels was not in a position to know whether Plaintiff's constitutional rights were being violated. Therefore, summary judgment should be granted as to McDaniels.

**Claim #2: False Arrest Under § 1983 Against Sheriff Ordway and the Sheriff's Department**

Plaintiff also seeks to hold Sheriff Ordway and the Sheriff's Department liable for false arrest under a theory of supervisory liability. Because Plaintiff has not raised a genuine issue of material fact sufficient to sustain a claim against Sheriff Ordway or the Sheriff's Department, Defendants' Motion for Summary Judgment should be granted as to Plaintiff's second claim.

### Sheriff Ordway

In a § 1983 claim, supervisor defendants may not be held vicariously liable for a subordinate's constitutional violation via the theory of *respondeat superior*. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978). In other words, a supervisor may only be liable for "his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), the Second Circuit set forth five ways in which a supervisor defendant's personal involvement in a constitutional violation may subject him or her to liability: (1) direct participation in the alleged constitutional violation; (2) failure to remedy the wrong after being informed of the violation through a report or appeal; (3) creation or continuance of a policy or custom under which the unconstitutional practices occurred; (4) gross negligence in supervising the subordinates who committed the wrongful acts; or (5) deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

10

Here, with respect to Sheriff Ordway, Plaintiff has not presented any facts to indicate that Sheriff Ordway could be held liable for the alleged violations at issue in this case. Indeed, Plaintiff has not presented evidence of *any* action or inaction by Sheriff Ordway in particular. Without any evidence relating to Sheriff Ordway, no reasonable trier of fact could find Sheriff Ordway liable for his own misconduct. Therefore, summary judgment should be granted as to Sheriff Ordway.

**Sheriff's Department**

Plaintiff has also not presented sufficient evidence to raise a triable issue as to the Sheriff Department's liability. Municipalities may only be held liable under § 1983 for a municipal employee's constitutional violation where the employee acted pursuant to municipal policy or custom, and the violation at issue in the case was caused by that policy or custom. *Monell*, 436 U.S. at 690.

Here, Plaintiff alleges the Sheriff's Department "had a policy of no or inadequate training of its officers, relying instead heavily on classroom education, which policy then ultimately led to the Defendants' violation of the Plaintiff's constitutional rights." ECF No. 25-2, at 23. In support of this allegation, Plaintiff cites statements made by Terwilliger, Shutt and McDaniels regarding their training and education. *Id.*, at 22-23. Terwilliger and Shutt each attended Southern Tier Law Enforcement Academy before joining the force, and McDaniels received an associate's degree in criminal justice from Corning Community College. ECF No. 22-3, Ex. C at 5-12, Ex. D at 5-13; ECF No. 22-4, Ex. E at 5. In addition, all three Defendants participate in approximately ten hours a month of training as part of their membership in the Critical Incident Response Team. ECF No. 22-3, Ex. D at 10-11.

Although the existence of an actionable municipal policy or custom may be inferred from the informal acts or omissions of supervisory officials rather than proven by formal written

ordinance or regulation, Plaintiff has failed to present evidence sufficient to allow a reasonable jury to draw that inference. To infer the existence of an actionable municipal policy in this situation, "it must be demonstrated that the municipality's failure to supervise or properly train its police force is so severe as to constitute 'gross negligence' or 'deliberate indifference' to a plaintiff's rights." *Sarus v. Rotundo*, 831 F.2d 397, 401 (2d Cir. 1987). Even if we assume, for the sake of argument, that the training received by Terwilliger, Shutt, and McDaniels has turned out to be insufficient, Plaintiff has not presented any basis for a reasonable jury to conclude that the municipality has been deliberately indifferent to Plaintiff's rights. Therefore, summary judgment should be granted as to the Sheriff's Department.

**Claim #3: False Imprisonment Under § 1983 Against Terwilliger, Shutt, and McDaniels**

Plaintiff's third claim alleges false imprisonment by Defendants Terwilliger, Shutt, and McDaniels. In New York, the torts of false arrest and false imprisonment are synonymous, and involve the same four elements. *Posr*, 944 F.2d at 96. Therefore, Plaintiff's third claim is redundant and Plaintiff's first and third claims shall be treated as a single claim. *Id.*

**Claim #4: Malicious Prosecution Under § 1983 Against All Defendants**

Plaintiff's fourth claim alleges malicious prosecution by all Defendants. Summary judgment should be granted as to all Defendants except for Deputy Terwilliger.

A defendant is liable for malicious prosecution where (1) defendant initiated a criminal prosecution against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was instituted with actual malice. *Posr*, 944 F.2d at 100. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must also show some deprivation of liberty consistent with the concept of seizure. *Levy*, 935 F. Supp. 2d at 588.

In general, a plaintiff cannot show that his arresting officers "initiated" a criminal proceeding against him, because "the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Id.* (quoting *Douglas v. City of New York*, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009). "However, where a police officer is accused of providing false information to a prosecutor that 'influences a decision whether to prosecute, he may be held liable for malicious prosecution.'" *Levy*, 935 F. Supp. 2d at 588-89 (quoting *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (Rakoff, J.)).

Here, Terwilliger was the person who submitted a report regarding the incident. In that report, Terwilliger wrote that Plaintiff had pushed Terwilliger and resisted arrest. Terwilliger also submitted the Information charging Plaintiff with Resisting Arrest and the Information charging Plaintiff with Harassment in the Second Degree. Because the court must view the facts in the light most favorable to Plaintiff for the purposes of this motion, the statements contained in those documents must be considered false in the present analysis. Therefore, Defendants' Motion for Summary Judgment must be denied with respect to the malicious prosecution claim against Terwilliger.

As to the other Defendants, however, summary judgment should be granted. Plaintiff has not presented any facts indicating that any of the other Defendants participated in "initiating" the criminal case against Plaintiff.

**Claim #5: Excessive Force Under § 1983 Against Terwilliger, Shutt, and McDaniels**

Plaintiff's fifth claim, against Defendants Terwilliger, Shutt, and McDaniels, alleges "battery" in violation of the Fourth and Fourteenth Amendments. However, taking into account the pleadings as a whole, Plaintiff appears to allege excessive force and seek relief under § 1983. Plaintiff's fifth claim will therefore be construed as a claim of excessive force. *See Levy*, 935 F.

13

Supp. 2d at 593. Defendants' Motion for Summary Judgment should be granted as to McDaniels, but denied as to Terwilliger and Shutt.

When an excessive force claim arises out of an arrest or investigatory stop, the Fourth Amendment right to be secure against "unreasonable" seizures is implicated. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Determining whether this right has been violated requires a court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The "calculus of reasonableness" must take into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

**Terwilliger and Shutt**

Viewing the facts in the light most favorable to the non-moving party, Terwilliger and Shutt tackled Plaintiff to the ground after Plaintiff had refused to consent to a pat down and had yanked his hand away from Shutt's grip. Once on the ground with Terwilliger and Shutt on top of him, Plaintiff's hands were out from his body and he did not attempt to resist the officers. In fact a witness, Brown, testified that Plaintiff attempted to submit to the officers by placing his own hands behind his back, but Terwilliger and Shutt were "cranking him around like a rag doll" and "didn't really give him a chance to . . .do what they were asking him to do." Shutt threatened to spray Plaintiff with pepper spray as Terwilliger punched Plaintiff in the side about four times. Plaintiff was transported via ambulance to St. James Mercy Hospital and ultimately diagnosed with broken ribs.

Under those circumstances, a reasonable jury could easily infer that the force applied by Terwilliger and Shutt was objectively unreasonable. Although Plaintiff refused to consent to a

pat down, this refusal alone did not provide Terwilliger or Shutt with a reasonable basis for suspecting Plaintiff of any crime. Defendants lean heavily on the fact that the officers were "outnumbered" in the woods, the fact that Plaintiff had handed over a comb knife, and Defendants' suspicions that Plaintiff knew some of the campers. Defendants argue that given this information, Terwilliger and Shutt acted reasonably to gain control of a "chaotic" situation. ECF No. 22-10. Although it is undisputed that the number of campers was greater than the number of officers, no undisputed facts indicate that the campers represented any kind of threat to officer safety. In fact, it is undisputed that the campers cooperated with the officers at all times and that no evidence of any kind of illegal activity was ever found. Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's excessive force claim against Terwilliger and Shutt should be denied.

### McDaniels

Investigator McDaniels' potential liability for the force used by Terwilliger and Shutt again turns on whether McDaniels was aware that Plaintiff's constitutional rights were being violated and had a realistic opportunity to intervene and prevent the harm. *Ricciuti*, 124 F.3d at 129. As with Plaintiff's false arrest claim, the fact that McDaniels was focusing most of his attention on the group of campers next to him (and therefore did not see important parts of the incident) is dispositive. Plaintiff does not dispute McDaniels' testimony that he did not see how Plaintiff and Terwilliger ended up on the ground in the first place. If Plaintiff had been the one to tackle Terwilliger, or if Plaintiff had shoved Terwilliger while McDaniels' head was turned, then the use of force by Terwilliger might not have been unreasonable. Because McDaniels was not in a position to know whether Plaintiff's constitutional rights were being violated, he had no opportunity to intervene and therefore may not be held liable for the force used by Terwilliger and Shutt. Summary judgment should be granted as to McDaniels.

**Claim #6: Battery Under New York State Law Against Terwilliger, Shutt, and McDaniels**

Under N.Y. C.P.L.R. § 215, an action to recover damages for battery must be commenced within one year. Here, the alleged battery occurred on August 10, 2009. ECF No. 1, at 4. Plaintiff signed and dated the Complaint on July 18, 2011 and filed the Complaint on September 7, 2011. *Id.* at 19. In his Reply to Defendants' Motion for Summary Judgment, Plaintiff admits that his state law claim for battery is barred by the statute of limitations. ECF No. 25-2, at 24. Summary judgment should therefore be granted as to Plaintiff's sixth claim.

**Claim #7: Malicious Prosecution Under New York State Law Against All Defendants**

Plaintiff's seventh claim is for malicious prosecution under NY state law, and is against all Defendants. Because a claim for malicious prosecution under NY state law involves the same elements as a claim for malicious prosecution seeking relief under § 1983,[8] the analysis regarding Plaintiff's fourth claim applies.

### IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 22) is GRANTED IN PART and DENIED IN PART. The Motion is granted with respect to: (1) Plaintiff's false arrest claims against McDaniels, Sheriff Ordway, and the Steuben County Sheriff's Department; (2) Plaintiff's malicious prosecution claims against Shutt, McDaniels, Sheriff Ordway, and the Steuben County Sheriff's Department; (3) Plaintiff's excessive force claim against McDaniels; and (4) Plaintiff's battery claim under New York state law, all of

---

[8] A malicious prosecution claim seeking relief under § 1983 implicates the doctrine of qualified immunity under § 1983, whereas a state law claim for malicious prosecution does not. But because no reasonable officer could have believed that there was probable cause to charge Plaintiff with either resisting arrest or harassment (given the facts assumed by the court at this stage), qualified immunity does not apply and the analysis is the same.

which are dismissed with prejudice. McDaniels, Sheriff Ordway, and the Steuben County Sheriff's Department are hereby dismissed from this action.

The Motion is denied with respect to (1) Plaintiff's false arrest claims against Terwilliger and Shutt; (2) Plaintiff's malicious prosecution claim against Terwilliger; and (3) Plaintiff's excessive force claims against Terwilliger and Shutt.

Plaintiff's Cross-Motion (ECF No. 25), seeking to strike the "expert" report of Michael Levine, is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: September 25, 2015
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court